

**SIGNED this 03 day of November, 2008.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br>    LOUIS EDWARD COLLIER, SR.,<br><br>               Debtor. | No. 07-51522<br>Chapter 7 |
| DON BUNCH and MICHAEL J. BUNCH,<br><br>    Plaintiffs,<br><br>vs.<br><br>LOUIS EDWARD COLLIER, SR.,<br><br>    Defendant. | Adv. Pro. No. 08-5008 |

### M E M O R A N D U M

Appearances:

| | |
|---|---|
| Mark A. Cowan, Esq.<br>272 West Main Street, Suite 100<br>Morristown, Tennessee 37814<br>*Attorney for Don and Michael Bunch* | Fred M. Leonard, Esq.<br>27 Sixth Street<br>Bristol, Tennessee 37620<br>*Attorney for Louis Edward Collier, Sr.* |

**Marcia Phillips Parsons**, United States Bankruptcy Judge. In this adversary proceeding, Plaintiffs Don Bunch and Michael Bunch seek a determination that the debt owed them by the Debtor Louis Edward Collier, Sr. is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Trial in this matter was conducted on September 17, 2008. For the reasons set forth hereafter, the court concludes that the debt is subject to discharge. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

I.

On October 25, 2007, the Debtor filed for bankruptcy relief under chapter 7. Shortly thereafter on January 28, 2008, the Plaintiffs commenced this adversary proceeding. In the complaint, the Plaintiffs allege that the Debtor is indebted to them in the sum of $161,000 plus interest and attorneys fees, arising out of a loan the Plaintiffs made to Collier Enterprises Inc. ("Collier Enterprises") on May 2, 2007, which was personally guaranteed by the Debtor and his son Louis Collier Jr. ("Collier"). According to the complaint, the Debtor made certain fraudulent misrepresentations to the Plaintiffs in order to induce them to make the loan, thereby rendering the debt nondischargeable under § 523(a)(2)(A).[1]

Testifying at the trial in this matter were the Plaintiffs, who are father and son, as well as the Debtor and his son. The central dispute in this case concerns what was said at a meeting attended by the four in early May 2007. The parties stipulated that the Debtor, a resident of Kingsport, Tennessee, is the retired, former Dean of Business Technology at Mountain Empire Community College in Big Stone Gap, Virginia. Over the course of the past six years, the Debtor has invested approximately $290,000 in helping Collier start several companies including Collier Inc., a corporation that operated a ServPro franchise specializing in fire and water damage cleanup.

Prior to the pivotal May 2007 meeting, either Collier or Collier Inc. sold a building in Kingsport, Tennessee to Michael Bunch, which he then leased back to Collier Inc. In the spring of 2007, Collier approached Michael Bunch about the possibility of obtaining a short-term loan for Collier Inc. According to Collier, the business was experiencing cash flow problems because of the

---

[1] The complaint also alleged that the Debtor's discharge should be denied under 11 U.S.C. § 727(a)(4)(A). However, in a memorandum opinion and order entered August 15, 2008, the court granted the Debtor summary judgment on this issue.

delay caused by their clients, i.e., insurance companies, not paying them until the completion of their work. Collier Inc. had been unable to obtain a loan from a bank because it had been in business less than two years, having only been incorporated in 2006.

Michael Bunch arranged for Collier to meet with him and his father, Don Bunch, at the senior Bunch's office in Morristown, Tennessee. Collier asked his father, the Debtor, to accompany him to Bunch's office, which he did. This meeting was the first time the Debtor had met either of the Plaintiffs and the first time that Don Bunch had met either of the Colliers.[2]

After introductions by Michael Bunch, Collier took the lead in explaining the business of Collier Inc. and its need for a short-term loan. Collier explained that the company had more business than it could handle, and that they had projected the company would gross $650,000 in business in 2006, its first year in operation, but instead it had brought in over $1 million with additional work in progress. Collier stated that the company was on pace to do $1.5 million to $1.6 million in business in 2007. He represented that the company was having cash-flow problems and needed a loan to cover expenses until such time as payment for three current projects was received, which should total around $200,000. He offered to repay the plaintiffs an additional $15,000 if they would make the loan, with the parties finally agreeing upon the sum of $21,000. The parties also agreed that Collier Inc. would assign the receivables from those three projects to the Plaintiffs, although Collier requested that these clients not be contacted to advise them to make payment directly to the Plaintiffs.

The parties dispute what statements the Debtor made, if any, at this meeting. Collier testified that his father "confirmed our position and what were trying to do." The Debtor testified that he

---

[2] The parties dispute whether the Plaintiffs' attorney, Ron Perkins, was in attendance at this meeting. The Colliers stated that he was, that he was introduced, and that Perkins stated he was there to draft the paperwork if something was worked out. Collier testified that Perkins called him the next day to obtain the names of the three accounts receivable that were to be assigned so that the names could be included in the loan document. The Plaintiffs, on the other hand, were confident that Perkins was not at the meeting. They testified that one of them met with Perkins a day or two after the meeting with the Colliers for the purpose of having him draft the document. Resolution of this dispute is unnecessary to determine the central issue in this case of whether the Debtor's obligation to the Plaintiffs should be excepted from discharge under § 523(a)(2)(A).

could not remember what he had said, but that it wasn't much because his son was making the presentation. Don Bunch characterized the Debtor as an active participant in the meeting, that he was "amening" his son and encouraging the loan. Don Bunch also testified that the Debtor stated at the meeting that upon Collier Inc.'s receipt of the checks on the three projects, he would personally drive to Morristown in order to deliver the checks to the Plaintiffs. Michael Bunch agreed with his father's testimony, but added that the Debtor had also stated that two of the three projects were nearly complete.

It is undisputed that within a couple of days after the initial meeting in Don Bunch's office, the Debtor and Collier returned to that office, where they signed a "Promissory Note, Assignment of Receivables, and Guaranty" dated May 2, 2007 (the "Note"), and received in exchange a check in the amount of $140,000. Under the terms of the Note, Collier Inc. agreed to pay the Plaintiffs in 45 days the sum of $161,000, with $21,000 of this amount being designated as a consulting fee, and assigned to the Plaintiffs the Bowman, Chase, and New ServPro receivables. Collier and the Debtor each signed the Note to evidence their personal guaranty of Collier Inc.'s obligation.

Collier Inc. failed to pay the Note on its due date or make any other payments thereafter. Collier testified that the loan proceeds were used by the company to replenish working capital and that none of the proceeds went to him personally or to his father. He also testified that after signing the Note, two of the three projects were expanded quite a bit, delaying payment by the clients. As to the third project, Collier stated that the proceeds, about $50,000, came in while he was out of the office and that one of the company's assistant managers deposited the check and used it to pay company expenses. Collier testified that when this happened, he set up a meeting with the Plaintiffs to explain the oversight and what they were doing to prevent its reoccurrence. Collier stated that his father went with him to this meeting, which was held on June 5 or 6, 2007, and the Debtor confirmed this testimony. The Plaintiffs, on the other hand, emphatically denied that any such meeting or conversation had taken place and stated that to the contrary, they had not seen either the Debtor or Collier after the Note was signed until two or three weeks before the trial when Collier came to their office.

Collier testified that Collier Inc. ceased operations in early July 2007, after Collier was forced to fire an assistant manager that had been dealing directly with the insurance companies and using subcontractors without documenting the work. Because Collier Inc. had been unable to finish

4

the two remaining projects and did not have the necessary paperwork due to the assistant manager's abscondence of the documents, Collier Inc. never received payment for these projects. Subsequently, the Plaintiffs filed suit in state court to collect on the Note, although the suit was stayed by the Debtor's bankruptcy filing.

II.

The Plaintiffs allege that the Debtor's obligation to them pursuant to his guaranty is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code, which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> . . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The plaintiffs have the burden of proof in this action that must be met by a preponderance of the evidence. *See Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 765 (Bankr. E.D. Tenn. 2003); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991). Moreover, exceptions to discharge are to be strictly construed against the creditor. *See Mfr.'s Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988).

Under the express terms of § 523(a)(2)(A), false representations provide a basis for nondischargeability unless they involve "a statement respecting the debtor's or an insider's financial condition." Written statements respecting a debtor's or an insider's financial condition fall within subsection (B) of § 523(a)(2). Thus, debts incurred as a result of oral misrepresentations respecting a debtor's or an insider's financial condition are not excepted from discharge under § 523(a)(2). *In re Joelson*, 427 F.3d 700, 704 (10th Cir. 2005); *see also Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, *5 (B.A.P. 6th Cir. 2007) (unpub. table opin.) ("Subsections (A) and (B) [of § 523(a)(2)] are mutually exclusive. All statements regarding a debtor's financial condition, whether written or oral, are expressly excluded from subsection (A).").

With one exception, all of the statements allegedly made by the Debtor that form the basis of this nondischargeability action pertain to the financial condition of Collier Inc. Specifically, the

5

Plaintiffs allege in the complaint that the Debtor made the following misrepresentations at the early May 2007 meeting:

> (1) that Collier Enterprises was about to receive three checks from different insurance companies within a few weeks totaling about $240,000.00; (2) that those checks would be driven down to the plaintiffs in Morristown as soon as they arrived so that the plaintiffs could be paid from the first proceeds of the checks; (3) that Collier Enterprises only needed a short (less than 45 days) bridge loan till the three checks came in; and (4) that Collier Enterprises had the financial wherewithal to repay the plaintiffs within 45 days at the latest.

At trial, the Plaintiffs also asserted that the Debtor made a misrepresentation by failing to inform them that Collier had not paid back all of the $290,000 the Debtor had given to him to be invested in various companies including Collier Inc. Also alleged to be a misrepresentation was the statement that two of the three assigned accounts receivable involved projects that were nearly complete.

Notwithstanding the fact that all of these alleged misstatements, other than the statement about delivering the checks upon their receipt, address the financial condition of Collier Inc., the Plaintiffs maintain that they are actionable against the Debtor under § 523(a)(2)(A) because Collier Inc. was not an insider of the Debtor. Under 11 U.S.C. § 101(31)(A)(iv), Collier Inc. was an insider of the Debtor if he was an "director, officer, or person in control" of the corporation. The Plaintiffs argue that the Debtor had none of these relationships with Collier Inc., citing his deposition testimony that his only involvement in his son's businesses was as an investor, that he was not a stockholder in Collier Inc. "to his knowledge," and that he had promissory notes evidencing his investment. At trial, the Debtor continued to characterize his involvement in the corporation as an investor but testified, contrary to this deposition testimony, that there were no promissory notes and that he was a shareholder, officer, and director of Collier Inc., although he admitted that he had no documents with him evidencing these roles. The Debtor also testified that he had nothing to do with the day-to-day operations of Collier Inc., that he had never asked for access to the financial records of the corporation, and that he had no personal knowledge of any of the business' accounts other than what his son told him.

Collier confirmed that his father was a 50% shareholder in Collier Inc., but was not asked whether his father was also an officer and director. Collier also testified that his father was not active in the business on a day-to-day basis, but stated that he talked with his father daily and kept

6

him abreast of the business. Moreover, the court takes judicial notice of the fact that the Debtor's 50% ownership interest in Collier Inc. was set forth in his statement of financial affairs.

The court concludes that Collier Inc. was an insider of the Debtor within the meaning of § 101(31)(A)(iv). While the court is troubled by the Debtor's inconsistent statements in his deposition and trial testimonies, which inconsistencies were not explained, the court finds it credible that the Debtor was both an officer and director of the corporation. In giving background information about the business, Collier characterized Collier Inc. as having been created by him and his father. It is not unusual in closely-held family corporations for the shareholders also to be the officers and the directors. Given the size of the Debtor's investment and Collier's testimony that he talked with his father daily about the business, it was more likely than not that the Debtor was not only a shareholder, but also an officer and director. Because of the Debtor's officer and director status, his oral statements regarding the financial condition of Collier Inc. are not actionable under § 523(a)(2).[3]

Moreover, the court concludes that even if Collier Inc. were not an insider of the Debtor, the necessary elements of fraud under § 523(a)(2)(A) were not established at trial with respect to any statement alleged to have been made by the Debtor. In *Rembert*, the Sixth Circuit Court of Appeals held that a creditor seeking to hold a debt nondischargeable under this provision must prove the following:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Serv., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

---

[3] Although not relevant to the question of whether Collier Inc. was an insider of the Debtor, the court notes that from the testimonies of the Plaintiffs, they relied upon the Debtor's alleged representations regarding Collier Inc.'s financial condition precisely because they saw him as someone with inside knowledge of the corporation's ability to repay them. While the Plaintiffs also represented that they were impressed by the fact that the Debtor was a retired college business dean, the court finds it highly questionable that they would have relied upon the Debtor's statements, as they allege, if they had believed that his role in Collier Inc. was limited to that of an outside investor. In other words, the court concludes that its finding of insider status is in accordance with the Plaintiffs' own expectations and understanding of the Debtor's relationship with Collier Inc.

With respect to whether the Debtor made the alleged misstatements at the May 2007 meeting, the Debtor testified that he could not recall what specifically he said at the meeting, but maintained that he did not say much, as his son did the presentation. Although the testimony from both of the Plaintiffs was less than clear as to which statements were made by the Debtor and which were made by Collier, Collier did not dispute that he made statements similar to those alleged by the Plaintiffs to have been said and Collier testified that his father "seconded" what he said. Similarly, Don Bunch testified, and Michael Bunch agreed, that the Debtor was "amening" his son's statements. The court concludes from the evidence that regardless of whether the Debtor personally made each of the statements that form the basis of this action, the Debtor indicated in some fashion that he agreed with his son's statements. Accordingly, the court will attribute the statements to the Debtor.

Nonetheless, the evidence did not establish by a preponderance that the statements were false when made. The Plaintiffs tendered no evidence that contradicted Collier's testimony regarding the financial state of Collier Inc.'s business at the time that the Plaintiffs made the loan to the corporation or that contradicted what happened to cause Collier Inc. to subsequently fail. The Plaintiffs' only evidence in this regard is the fact that they were not repaid, so they make the inference that the Debtor, considering his background as a former college dean of business technology, must have been lying about Collier Inc.'s financial condition. When Don Bunch was asked why he believed the Debtor's statements were false, he responded, "If someone tells you that they will do something and then they don't, there is a misrepresentation." However, Mr. Bunch's statement fails to take into that unanticipated circumstances may intervene and prevent someone from performing what they had truly intended and represented they would perform. *Hall v. Jackson (In re Jackson)*, 348 B.R. 595, 599 (Bankr. M.D. Ga. 2006) (quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (15th ed. rev. 2006) ("A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent."). Mere breach of contract is insufficient to render a debt nondischargeable for fraud. *Lail v. Weaver (In re Weaver)*, 174 B.R. 85, 90 (Bankr. E.D. Tenn. 1994). Additionally, Mr. Bunch's statement suggests that he considered it up to the Debtor to come into court and prove that his actions were not fraudulent since the Debtor did not do what he had promised. To the contrary, as previously noted, the Plaintiffs have the affirmative burden of establishing that the Debtor's statements were false, a burden the court finds that they have failed to carry.

8

Regarding the Debtor's failure to advise the Plaintiffs that his son had not repaid the monies he had invested in his companies, the Debtor testified that he could not recall whether he had informed the Plaintiffs of this fact. The Debtor stated that he considered the monies invested by him in his son's companies to be long-term investments for his retirement.

Silence may constitute a misrepresentation for purposes of § 523(a)(2). *In re Copeland*, 291 B.R. at 760. However, upon consideration of all of the evidence in this case, the court does not conclude that the Debtor failed to disclose this information in order to deceive the Plaintiffs. *See In re Rembert*, 141 F.3d at 281 ("Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard."). The court finds it credible that the Debtor considered the invested monies to be long-term investments such that their repayment was irrelevant, as far as the Debtor was concerned, to the question of whether Collier Inc. could timely meet its obligation to repay the Plaintiffs when the Note became due. Collier Inc. was a new company, and there was no indication that the monies advanced by the Debtor, whether loans or capital investments, would need to be repaid before Collier Inc. repaid the Plaintiffs.

On a final note, the court realizes that its conclusion in this case will be a difficult one for the Plaintiffs to accept, as it is to many creditors who have lawful obligations owing to them discharged by the bankruptcy process. Nonetheless, Congress, in enacting § 523(a)(2) of the Bankruptcy Code, limited the fraud discharge exception for statements regarding a debtor's or an insider's financial condition to fraud arising out of written statements, a factual circumstance not present in this case. And, while the Plaintiffs appeared to be genuinely convinced that they had been defrauded, the evidence presented to the court did not support this conclusion. Although, as previously noted, the court is troubled by the Debtor's inconsistent statements regarding his relationship with Collier Inc., the court is not convinced upon careful consideration of all of the evidence in this case that the Debtor's dealings with the Plaintiffs were fraudulent, i.e., that he intentionally or recklessly made any misstatements to the Plaintiffs with the intent to deceive them.

### III.

An order will be entered in accordance with the foregoing, finding that the Debtor's obligation to the Plaintiffs is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

# # #